1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10  ADRIA H.,

11           Plaintiff,

12      v.

13  COMMISSIONER OF SOCIAL
    SECURITY,

14           Defendant.

15

16

CASE NO. 2:21-cv-00899-JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17      This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

18  Magistrate Judge Rule MJR 13.  *See also* Consent to Proceed Before a United States Magistrate

19  Judge, Dkt. 3.  This matter has been fully briefed.  *See* Dkts. 16, 18, 19.

20      Plaintiff first filed her claim for benefits on August 12, 2010, and her case has been

21  making its way through four administrative hearings and two district court filings, all of which

22  resulted in a remand to the Administration for further proceedings.  Now, over 11 years later,

23  plaintiff appears before this court again, appealing a fourth ALJ decision denying benefits.

24

1   Plaintiff is seeking an award of benefits because of the ALJ's errors in evaluating her claim.  The

2   Court agrees that the ALJ committed harmful error.  It is time for the Administration to award

3   her benefits.

4        Plaintiff, who alleges that she is disabled due to physical and mental impairments,

5   including depression and dissociative identity disorder, challenges the Administrative Law

6   Judge's ("ALJ") evaluation of three examining physicians' opinions.

7        The Court concludes that the ALJ erred when he rejected Drs. Walker, Uhl, and Gordin's

8   opinions regarding the impact of plaintiff's mental health conditions and symptoms—including

9   mood symptoms and hearing screaming voices in her head—on her abilities to perform work

10  activities.  In rejecting these opinions, the ALJ wrongfully discounted the examining doctors'

11  objective clinical findings, as well as other evidence in the record, that support the doctors'

12  opined limitations that plaintiff would be significantly limited in her abilities to complete a

13  normal workday and workweek without interruptions from her symptoms, among other

14  limitations.

15       Crediting these examining physicians' opinions as true, the ALJ would be required to

16  find plaintiff disabled on remand.  Therefore, remanding this case for the ALJ to reevaluate the

17  evidence would serve no useful purpose.  Accordingly, remand for award of benefits is the

18  appropriate remedy.

19                    **PROCEDURAL HISTORY**

20       This case has a lengthy procedural history, which includes four written decisions by two

21  ALJs and two prior reviews by this Court.  Plaintiff's applications for disability insurance

22  benefits ("DIB") pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income

23  ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were

24

1   denied initially and following reconsideration. *See* AR 2043 (noting that plaintiff later withdrew

2   her claim for Title II benefits). Plaintiff's requested hearing was held before ALJ Cheri Filion on

3   May 22, 2012. *See id.* On August 30, 2012, ALJ Filion issued a written decision in which she

4   concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR 2043; *see*

5   *also* AR 11–38.

6          On January 4, 2013, the Appeals Council denied plaintiff's request for review (AR 1),

7   and plaintiff subsequently filed a complaint in this Court in January 2013 seeking judicial review

8   of ALJ Filion's written decision. *See Holub v. Colvin*, Case No. 2:13-cv-00159-JPD, Dkt. 3

9   (W.D. Wash. Jan. 29, 2013). On August 29, 2013, the Court reversed ALJ Filion's decision and

10  remanded the case because ALJ Filion and the Appeals Council erred in their evaluation of

11  medical opinion evidence. *See* AR 1283–92. On October 21, 2013, the Appeals Council issued

12  an order vacating ALJ Filion's decision and remanding the case for further proceedings

13  consistent with the Court's order. *See* AR 1300–1301.

14         On remand, ALJ Filion held a second hearing with plaintiff on June 12, 2014. *See* AR

15  1181. On March 5, 2015, ALJ Filion issued another written decision in which she again

16  concluded that plaintiff was not disabled pursuant to the Social Security Act. *See* AR 1181–96.

17  Plaintiff then filed a second complaint in this Court in May 2015 seeking judicial review of ALJ

18  Filion's second written decision. *See Holub v. Colvin*, 2:15-cv-00706-RBL, Dkt. 4 (W.D. Wash.

19  May 8, 2015). On February 9, 2016, the Court again reversed ALJ Filion's second decision and

20  remanded the case because the ALJ erred in her evaluation of medical opinion evidence. *See* AR

21  2237–48. The Appeals Council subsequently issued another order vacating ALJ Filion's

22  decision and remanding the case to another ALJ. *See* AR 2254–55.

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 3

On May 16, 2018, plaintiff appeared before ALJ M.J. Adams for a third hearing.  *See* AR 2265.  On September 4, 2018, ALJ Adams issued a written decision, in which he concluded that plaintiff was not disabled pursuant to the Social Security Act.  *See* AR 2264–89.  Plaintiff sought review of ALJ Adam's decision, and on February 28, 2020, the Appeals Council issued an order vacating yet another ALJ's decision and remanding the matter back to ALJ Adams to consider new medical opinion evidence and to reevaluate plaintiff's residual functional capacity.  *See* AR 2306–2307.

On April 27, 2021, ALJ Adams held a fourth hearing with plaintiff.  *See* AR 2043.  On May 6, 2021, ALJ Adams issued another written decision, which is now before the Court, and ALJ Adams again concluded that plaintiff is not disabled pursuant to the Social Security Act.  *See* AR 2043–2071.

Neither party sought review by the Appeals Council.  *See* Dkt. 6, at 2.  After expiration of 60 days, the ALJ's decision became the final agency decision subject to judicial review.  *See id.*; 20 C.F.R. § 404.981.  Plaintiff filed a complaint in this Court seeking judicial review of ALJ Adam's written decision in July 2021.  *See* Dkts. 1,6.  Defendant filed the sealed administrative record ("AR") regarding this matter on September 20, 2021.  *See* Dkts. 10, 11.

## BACKGROUND

Plaintiff, Adria H., was born in 1983 and was 26 years old on the alleged date of disability onset of August 12, 2010.  *See* AR 2044, 2070.  Plaintiff completed her Master's degree in 2008, and her work history includes employment as an editor, research assistant, and teaching assistant.  *See* AR 47–49.  Plaintiff states that she stopped working due to her conditions.  *See* AR 48.

According to the ALJ, plaintiff has at least the severe impairments of bilateral upper extremity conditions, early cervical degenerative disc disease, major depressive disorder, dissociative identity disorder, somatic symptoms disorder, and personality disorder.  AR 2046–47.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

Plaintiff argues that the ALJ erred in discounting the opinions of three examining doctors, Drs. Walker, Uhl, and Gordin.  *See* Dkt. 16, at 22–25.  Finding this issue dispositive, the Court does not address plaintiff's remaining arguments.

### I.      Examining Doctors' Opinions

From 2015 to 2019, three Washington State Department of Social and Health Services ("DSHS") physicians examined plaintiff on four occasions, each rendering a written evaluation regarding plaintiff's mental impairment diagnoses, functional limitations, examination observations, clinical interview notes, and mental status examination ("MSE") findings.  *See* AR 2703–12, 2730–33, 3037–42, 4397–4401.  Each of the DSHS examining doctors opined that plaintiff would have a number of marked to severe functional limitations that would impact her ability to perform work activities, as summarized below.  *See id.*

In January 2015, W. Douglas Uhl, Psy.D. examined plaintiff and diagnosed her with posttraumatic stress disorder ("PTSD"), psychotic disorder, and dissociative disorder.  AR 2704.

1    Based on intensity and pervasiveness of all symptoms—including hearing voices in her head—

2    and impairment of functioning, Dr. Uhl opined that plaintiff is severely limited in her abilities to

3    adapt to changes in a routine work setting and to communicate and perform effectively in a work

4    setting.  AR 2705.  Dr. Uhl further opined that plaintiff is markedly limited in a number of

5    functional activities, including her abilities to complete a normal workday and workweek

6    without interruptions from her symptoms and to maintain appropriate behavior in the workplace.

7    *Id.*

8         In July 2015, Mendel Gordin, M.D. examined plaintiff and diagnosed her with PTSD,

9    schizoaffective disorder, major depression disorder, anxiety disorder, and pain disorder

10   associated with psychological factors.  AR 2731.  Based on the severity of her symptoms—

11   hearing screaming voices and anxiety—Dr. Uhl opined that plaintiff would have a number of

12   severe and marked work-related functional limitations, including that plaintiff would be severely

13   limited in her abilities to follow even short and simple instructions and to complete a normal

14   workday and workweek without interruptions from her symptoms.  AR 2732.

15        In May 2017, Ellen L. Walker, Ph.D. examined plaintiff and diagnosed her with

16   dissociative identity disorder and schizoaffective disorder.  AR 3038.  Based on the severity of

17   plaintiff's symptoms—hearing screaming voices, anxiety, and depressed mood—Dr. Walker

18   opined that plaintiff would have a number of marked functional limitations, including that

19   plaintiff would be markedly limited in her ability to complete a normal workday and workweek

20   without interruptions from her symptoms.  AR 3038–39.

21        In February 2019, Dr. Walker examined plaintiff a second time and again diagnosed her

22   with dissociative identity disorder and schizoaffective disorder.  Dr. Walker again opined that

23

24

1    plaintiff would have a number of marked functional limitations and that based on the combined

2    impact of her impairments, plaintiff's overall severity rating is "marked."  AR 4398–99.

3          Examining Drs. Uhl, Gordin, and Walker's opinions that plaintiff would have a number

4    of work-related limitations potentially consistent with a finding of disability are contradicted, for

5    the most part, by State agency reviewing physicians, who opined in 2015 and 2016 that plaintiff

6    would have at most moderate functional limitations related to her mental impairments.  *See* AR

7    2212–14, 2230–32. When an examining physician's opinion is contradicted, the opinion can be

8    rejected "for specific and legitimate reasons that are supported by substantial evidence in the

9    record."  *Lester v. Chater*, 81 F.3d 821, 830–31 (citations omitted).[1]  Therefore, the Court

10   reviews the ALJ's decision for whether he gave specific, legitimate reasons supported by

11   substantial evidence to reject Drs. Uhl, Gordin, and Walker's opinions.  *See id.*

12         The ALJ collectively assigned "less weight" (AR 2059) and essentially rejected the

13   examining physicians' opinions because: (1) the doctors did not provide sufficient rationale for

14   the assessed limitations; (2) the doctors' opined "extreme" limitations are inconsistent with

15   plaintiff's "normal presentation" throughout the medical record; (3) the doctors did not consider

16   plaintiff's daily activities; (4) the doctors did not consider inconsistencies in plaintiff's report of

17   symptoms and limitations; (5) the doctors made a finding of disability reserved to the

18   Commissioner; and (6) Dr. Walker's 2019 assessment of marked limitations is inconsistent with

19   "generally normal" MSE findings.  AR 2060–61.

20

21

22   [1]    The Administration has amended regulations for evaluating medical evidence, but the
23   amended regulations apply only to claims filed on or after March 27, 2017 and therefore are not
     relevant to this case.  *See* 20 C.F.R. §§ 404.1527, 416.927 (applicable to claims filed before
     March 27, 2017); 20 C.F.R. §§ 404.1520c, 416.920c (applicable to claims filed after March 27,
24   2017).

1    Regarding the first reason for rejecting the examining doctors' opinions, the ALJ found

2    that the doctors did not provide sufficient rationale for each of the assessed limitations.  *See* AR

3    2060.  Although an ALJ may disregard a physician's opinion if that opinion is inadequately

4    supported by clinical findings or by the record as a whole, substantial evidence does not support

5    the ALJ's rejection of the examining doctors' opinions on this basis.  *See Batson v. Comm'r of*

6    *Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citation omitted).

7    In this case, each of the examining doctors extensively documented their findings,

8    including plaintiff's clinical interview, symptoms, diagnoses, limitations, and MSE findings.  *See*

9    AR 2703–12, 2730–33, 3037–41, 4397–4401.  That the examining doctors did not write the

10   specific bases for each limitation next to that limitation is not a rationale reason to reject the

11   opinions.  For instance, each doctor noted abnormalities in plaintiff's mood and affect.  *See* AR

12   2706 (despondent mood and labile affect), AR 2733 (anxious and dysphoric mood and restricted

13   affect), AR 3040 (anxious mood and affect), AR 4400 (anxious and depressed mood and affect).

14   Further, each doctor noted abnormalities in plaintiff's thought process, perception, memory,

15   concentration, and judgment during the MSEs.  *See* AR 2707 (noting disordered thought and

16   voices in head), AR 2733 (noting abnormal thought process, perception, and concentration due to

17   anxiety and "screaming chorus" of voices in head), AR 3041, 4401 (noting significant difficulty

18   in memory and concentration due to psychosis, anxiety, and depression).  These findings provide

19   rationale for Drs. Uhl, Gordin, and Walker's opinions.  Therefore, the ALJ's conclusion that the

20   doctors did not sufficiently explain each assessed limitation is not supported by substantial

21   evidence.  *See Kuczi v. Berryhill*, No. C16-1139-TSZ-JPD, 2017 WL 2304032, at *7 (W.D.

22   Wash. Apr. 26, 2017) (rejecting a similar argument where the doctor "thoroughly completed

23   every portion of the DSHS form, which does not include space under each limitation to provide a

24

1    narrative explanation."); *Dukes v. Astrue*, No. C10-1812-RAJ-BAT, 2011 WL 2292356, at \*3

2    (W.D. Wash. May 23, 2011) ("While the doctor's explanation of his opinion is skimpy, as is

3    typical of virtually all evaluations using the DSHS form, this is not a situation in which the

4    doctor rendered a conclusory opinion, and nothing more.").

5        Regarding the ALJ's second reason, the ALJ concluded that the examining doctors'

6    opined "extreme" limitations were inconsistent with plaintiff's typically "normal presentation" in

7    the overall medical record.  AR 2060.  In support of this finding, the ALJ referenced his

8    discussion of plaintiff's symptom testimony earlier in the written decision.  *See id.*  ("discussed

9    above at finding #4").  An ALJ may reject an examining physician's medical opinion based on

10   inconsistencies in the medical record.  *See* 20 C.F.R. § 416.927(c)(4); *Tommasetti v. Astrue*, 533

11   F.3d 1035, 1041 (9th Cir. 2009).  However, when an ALJ seeks to discredit a medical opinion,

12   he must explain why his own interpretations, rather than those of the doctor, are correct.  *Reddick*

13   *v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22

14   (9th Cir. 1988)).

15       As an initial matter, the ALJ's general reference to his prior findings regarding plaintiff's

16   symptom testimony is not a sufficient explanation as to why the examining doctors' opinions

17   should be discredited.  *See Reddick*, 157 F.3d at 725; *see also Blakes v. Barnhart*, 331 F.3d 565,

18   569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the

19   evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's

20   ultimate findings.").

21       Further, even reviewing the prior discussion of plaintiff's symptom testimony, the ALJ

22   appears to have mischaracterized records reflecting plaintiff's presentation.  For example,

23   although the ALJ cited to records apparently showing plaintiff's "normal" presentation (AR

24

1    2060), many of the cited records reflect that plaintiff's mood and affect were anxious, depressed,

2    flat, and/or restricted.  *See, e.g.*, AR 1130, 1551–52, 2706–2707, 2752, 2936, 2996, 5278, 5354,

3    5356.  Additionally, other records cited by the ALJ reflect that plaintiff was alert, cooperative,

4    and in no distress in the context of *physical* examinations—not *mental* health examinations.  *See,*

5    *e.g.*, AR 2949, 3424–25, 3482, 3484, 3804, 3806, 3809, 3830, 3982, 4390, 4405, 4425.  Drs. Uhl

6    and Walker also noted that plaintiff was alert, oriented, and cooperative, despite a number of

7    other observed abnormalities in plaintiff's mental functioning.  *See* AR 2706–2707 (noting

8    positive attitude and oriented), AR 3040, 4400 (noting cooperative and oriented); *see also* AR

9    756, 849, 864, 944, 2936 (additional records noting restricted, anxious, and flat mood and/or

10   affect, among other abnormalities).  Without more explanation, it is unclear to the Court how the

11   ALJ's cited records are inconsistent with the examining doctors' opinions.  *See Reddick*, 157

12   F.3d at 725.  Thus, the ALJ's conclusion—that plaintiff's generally "normal" presentation is

13   inconsistent with examining doctors' opined limitations—is not supported by substantial

14   evidence.

15          As for the ALJ's third reason, the ALJ found that the examining doctors failed to

16   consider evidence of plaintiff's activities.  AR 2060.  However, it appears that the examining

17   doctors did consider plaintiff's reported activities.  *See* AR 2703–2704, 2730, 3037–38, 4397–98

18   (noting hobbies, chores, self-care, social interactions, and other activities).  Further, to the extent

19   that the ALJ concluded that the doctors' opinions are inconsistent with plaintiff's daily activities,

20   the ALJ failed to specify or explain any such conflict.  *See* AR 2060; *Reddick*, 157 F.3d at 725.

21   Such a vague finding is insufficiently specific to justify rejecting Drs. Uhl, Gordin, and Walker's

22   opinions.  *See Embrey*, 849 F.2d at 421–22.

23

24

1    Regarding the ALJ's fourth reason, the ALJ concluded—without explanation—that the

2  examining doctors failed to consider inconsistencies in plaintiff's self-reported symptoms and

3  limitations.  *See* AR 2060 (again, generally referencing his prior discussion of plaintiff's

4  symptom testimony).  As stated above, the ALJ's general reference to plaintiff's symptom

5  testimony is not a sufficient explanation as to why the examining doctors' opinions should be

6  discredited.  *See Reddick*, 157 F.3d at 725; *see also Blakes*, 331 F.3d at 569.  Further, to the

7  extent that the ALJ concluded that the examining doctors relied too heavily on plaintiff's self-

8  reports, the ALJ's conclusion is not supported by substantial evidence.  As discussed above, each

9  of the examining doctors' opinions is accompanied by objective MSE findings and clinical

10 observations.  *See* AR 2703–12, 2730–33, 3037–41, 4397–4401; *see also* Paula T. Trzepacz and

11 Robert W. Baker, The Psychiatric Mental Status Examination 4 (Oxford University Press 1993)

12 ("Like the physical examination, the Mental Status Examination is termed the *objective* portion

13 of the patient evaluation.").  Because the examining doctors' opinions include MSE findings and

14 clinical observations, as well as plaintiff's self-reports, there is no basis for the conclusion that

15 these opinions were based more heavily on plaintiff's self-reports.  *See Ghanim v. Colvin*, 763

16 F.3d 1154, 1162 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based on a patient's

17 self-reports than on clinical observations, there is no evidentiary basis for rejecting the

18 opinion.").

19    Next, the ALJ concluded that the examining doctors' assessed limitation—that plaintiff

20 would be limited in completing a normal workday and workweek—is a legal conclusion reserved

21 to the Commissioner.  AR 2060 (citing 20 C.F.R. §§ 404.1527([d])(1), 416.927([d])(1)).  Here,

22 the ALJ reasoned that such a limitation is not a "precise vocational restriction[]," but rather "a

23 finding that [plaintiff] cannot work on a consistent basis."  AR 2060.  But the ALJ's

24

1    characterization of this limitation ignores that the examining doctors qualified their opinions:

2    each stated that plaintiff would be severely or markedly limited in completing a normal

3    workday/work week "without interruptions from psychologically based symptoms."  AR 2705,

4    2732, 3039, 4399.  With this qualification, Drs. Uhl, Gordin, and Walker's opinions are not

5    simply a conclusion that plaintiff cannot work but an opinion about plaintiff's ability to work

6    *without interruption*.  These are conclusions regarding plaintiff's functioning—not legal

7    conclusions reserved for the Commissioner.  Indeed, if the ALJ's reasoning is accepted, a severe

8    or marked rating in any functional area would be rejected as a conclusion reserved to the

9    Commissioner.  Accordingly, the ALJ's finding that such a limitation is a legal conclusion

10   reserved to the Commissioner is not supported by substantial evidence.

11            Finally, specifically regarding Dr. Walker's 2019 opinion, the ALJ found that Dr.

12   Walker's opined marked limitations were not consistent with plaintiff's "generally normal" MSE

13   findings during that examination or with the record as a whole.  AR 2061.  However, as

14   discussed above, Dr. Walker's 2019 evaluation included MSE findings that plaintiff's mood and

15   affect were anxious and depressed, and that plaintiff exhibited abnormal memory and

16   concentration due to high level anxiety and psychosis.  *See* AR 4400–4401.  It appears that the

17   ALJ mischaracterized these objective findings, which tend to support Dr. Walker's opinion that

18   plaintiff would have a number of marked functional limitations.  Further, the ALJ's general

19   finding as to inconsistencies with overall record is too vague a finding that is insufficiently

20   specific to justify rejecting Dr. Walker's 2019 opinion.  *See Embrey*, 849 F.2d at 421–22.

21   Accordingly, the ALJ's conclusion that Dr. Walker's 2019 opinion is inconsistent with MSE

22   findings and the overall record is not supported by substantial evidence.

23

24

1    In sum, the ALJ erred because he failed to provide a specific and legitimate reason

2    supported by substantial evidence to discount Drs. Uhl, Gordin, and Walker's opinions. *See*

3    *Lester*, 81 F.3d at 830–31.  The Court further concludes that the error was not harmless because

4    had the ALJ fully credited these doctors' opinions, the residual functional capacity ("RFC")

5    would have included greater limitations. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir.

6    2015) (quoting *Stout v. Cmm'r*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)) ("'a reviewing court

7    cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ,

8    when fully crediting the testimony, could have reached a different disability determination.'").

9    **II.    Remaining Issues**

10    Plaintiff also argues that the ALJ erred in evaluating plaintiff's symptom testimony and

11    other medical opinion evidence.  Because this case may be resolved without considering the

12    ALJ's assessment of this evidence, the Court declines to address these issues.

13    **III.    Remand For Award of Benefits**

14    Plaintiff asks the Court to remand this case for an award of benefits. *See* Dkt. 16, at 25;

15    Dkt. 19, at 5–7.  "[W]here the [ALJ] fails to provide adequate reasons for rejecting the opinion of

16    a treating or examining physician, we credit that 'opinion as a matter of law.'" *Harman v. Apfel*,

17    211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Lester*, 81 F.3d at 834).  The Ninth Circuit has

18    developed a three-step analysis for determining when evidence should be credited as true and

19    when a remand for a direct award of benefits is appropriate.  Such remand is generally proper

20    only where:

21    (1) the record has been fully developed and further administrative proceedings
     would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient

22    reasons for rejecting evidence, whether claimant testimony or medical opinion; and
     (3) if the improperly discredited evidence were credited as true, the ALJ would be

23    required to find the claimant disabled on remand.

24

1    *Trevizo v. Berryhill*, 871 F.3d 664, 682–83 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d

2    995, 1020 (9th Cir. 2014)).  Where an ALJ makes a legal error, but the record is uncertain and

3    ambiguous, the proper approach is to remand the case for further proceedings.  *Treichler v.*

4    *Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014).  However, where there is no

5    serious doubt based on evaluation of the record as a whole that the ALJ would be required to find

6    plaintiff disabled, remand for award of benefits is proper.  *See Trevizo*, 871 F.3d at 683.

7            Here, the record has been fully developed and further administrative proceedings would

8    serve no useful purpose.  Considering the longitudinal record of the doctors' evaluations from

9    2015 to 2019, the overall evidence of record supporting the doctors' opinions, and the proper

10   deference and weight given to an examining physician's opinion (*see supra*, Section I), any

11   further administrative proceeding would not be helpful in reevaluating any inconsistencies in the

12   State agency reviewing doctors' opinions.  *See* AR 2212–14, 2230–32; *Holohan v. Massanari*,

13   246 F.3d 1195, 1211 (9th Cir. 2001); *Lester*, 81 F.3d at 830–31.  The State agency reviewing

14   doctors reviewed only a limited snapshot of plaintiff's medical records up to 2016.  *See* AR

15   2212–14, 2230–32.  Further, every other treating and examining doctor of record opined that

16   plaintiff would be severely and/or markedly impaired in her abilities to sustain work activities,

17   including her abilities to communicate effectively and perform in a workplace setting, to adapt to

18   changes in the workplace, and to complete a normal workday and workweek without

19   interruptions due to symptoms.  *See* AR 957, 848, 866, 878–79, 1055–56, 1133, 2937–40, 2990–

20   91, 2994–95, 5162–63.

21           If Drs. Uhl, Gordin, and Walker's opinions were credited as true—particularly the

22   opinions that plaintiff would be severely or markedly limited in her ability to complete a normal

23   workday and workweek without interruptions from her symptoms—the ALJ would be required

24

to find plaintiff disabled on remand.  *See* AR 2705, 2732, 3039, 4398–99; *Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017) ("Because the VE testified that a [plaintiff] with the physical limitations outlined in [a treating doctor]'s medical opinion would be unable to do any full-time work, the [treating doctor]'s medical opinion *alone* establishes that [the plaintiff] is entitled to benefits." (citation omitted)).

Both the ALJ and plaintiff's counsel questioned the vocational expert ("VE") at multiple hearings regarding whether plaintiff would be competitively employable if she was off task more than 20% of the workday and had productivity deficits.  *See* AR 82–83, 2170.  The VE concluded that in such an instance a person would not be able to maintain competitive employment.  *See id.*

The Court notes that there are discrepancies between Drs. Uhl, Gordin, and Walker's opined marked to severe limitations.  *Compare, e.g.,* AR 2732 (opining a severe limitation in plaintiff's ability to complete a normal workday and workweek without interruption from symptoms) *with* AR 2705, 3039, 4399 (opining a marked limitation regarding the same). However, in this case, the differing level of severity of the opined limitations does not create a conflict in the overall record or cast serious doubt that plaintiff is disabled.  *See Trevizo*, 871 F.3d at 683.  Even crediting the severe limitations as marked, the ALJ would still be required to find plaintiff disabled on remand based on the VE's testimony.  *See* AR 82–83, 2170.

Therefore, crediting the DSHS examining physicians' opinions as true, there is no serious question regarding plaintiff's lack of employability, and remand for an award of benefits is the appropriate remedy.

1

**CONCLUSION**

2       Based on these reasons and the relevant record, the Court **ORDERS** that this matter be

3   **REVERSED** and **REMANDED** for an award of benefits.

4       **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

5       Dated this 7th day of January, 2022.

6

7

J. Richard Creatura
8   Chief United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24